UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                              |   |                                 |
|------------------------------|---|---------------------------------|
| WINSTON & STRAWN LLP,        | ) |                                 |
|                              | ) |                                 |
| Plaintiff,                   | ) |                                 |
|                              | ) |                                 |
| v.                           | ) | Civil Action No. 13-524 (EGS)   |
|                              | ) |                                 |
| JAMES P. MCLEAN, JR, et al., | ) |                                 |
|                              | ) |                                 |
| Defendants.                  | ) |                                 |

**MEMORANDUM OPINION**

**I. Introduction**

Plaintiff Winston & Strawn LLP ("W&S") sues defendants Crumens Ltd. ("Crumens") and James P. McLean, Jr. ("Mr. McLean"), proceeding *pro se*, for breach of contract. W&S, a law firm with an office in the District of Columbia, argues that it provided legal services pursuant to a contract and Mr. McLean refuses to pay. Pending before the Court is W&S's motion for summary judgment. After careful consideration of the motion, the response, the reply thereto, the entire record, and the applicable law, W&S's motion for summary judgment is **GRANTED**.

**II. Background**

**A. Factual Background**

In April 2012, Mr. McLean—on behalf of Crumens—agreed in writing to pay W&S to provide legal services to Edward S.

1

Warneck.[1] *See* Engagement Agreement ("E.A."), ECF No. 51-2 at 2-6.[2] Mr. McLean lived with "the mother of [Mr. Warneck's] daughter-in law" and in March 2012 "contacted [Mr. Warneck] by phone and offered to pay [his] legal fees involving [] various investigations." Warneck Aff., ECF No. 51-8 ¶ 3. Mr. Warneck accepted Mr. McLean's offer and met with Thomas Buchanan, a W&S attorney who Mr. McLean had recommended. *Id.* ¶ 5.

On April 11, 2012, W&S prepared an Engagement Agreement, which clarified that W&S represented Mr. Warneck "individually in connection with potential litigation involving the Department of Justice, the Department of Transportation, Creditors of Direct Air, and other matters relating to your employment at Direct Air ('the Litigation')." E.A., ECF No. 51-2 at 2. As set forth in the Engagement Agreement, Crumens "agreed to pay [Mr. Warneck's] costs and legal expenses in connection with the litigation." *Id.* The Engagement Agreement also explained the nature of W&S's services, the fees for those services, and that payment was due "within thirty days of . . . receipt of [W&S's] statement." *Id.* at 3. Mr. Warneck signed the Engagement Agreement on April 13, 2012. *Id.* at 5. Mr. McLean signed the

---

[1] Mr. Warneck is not a party to this litigation, as he was not obligated to pay for W&S's services under the contract.
[2] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Engagement Agreement, on behalf of Crumens "c/o Johnson & McLean, LLC" on April 16, 2012. *Id.* at 6.

Pursuant to the Engagement Agreement, W&S began representing Mr. Warneck in April 2012. *See, e.g.*, Def.'s Exs., ECF No. 55-1 at 11-86; ECF No. 55-2 at 26-41 (billing statements detailing work performed on Mr. Warneck's behalf). Beginning in June 2012, W&S sent Mr. Warneck and Mr. McLean monthly invoices. *See, e.g.*, Statement of Account, ECF No. 51-6 at 2; Def.'s Ex., ECF No. 55-1 at 11-86 (billing statements); *id.* at 87-88 (emails related to invoices). W&S represented Mr. Warneck through March 2013. At that time, W&S stopped providing legal services because it had not been paid. Statement of Account, ECF No. 51-6 at 2.

From April 2012 through March 2013, W&S provided $495,053.60 worth of legal services to Mr. Warneck. *Id.* For almost a year, Mr. McLean promised he would pay W&S's invoices. *See* Def.'s Ex., ECF No. 55-1 at 87-160 (emails from Mr. McLean to Mr. Buchanan promising payment and explaining lack of payment). Indeed, Mr. McLean never challenged or objected to an invoice. McLean Dep., ECF No. 51-3 at 45:10-13. To date, Mr. McLean has not paid W&S for the legal services it provided Mr. Warneck. *Id.* 47:6-9.

## B. Procedural Background

On August 19, 2014, the Court granted W&S's motion for summary judgment as conceded pursuant to Local Rule 7(b), as Mr.

3

McLean had not timely filed his memorandum in opposition. *See* Order, ECF No. 54. Mr. McLean appealed the Court's Order to the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). In December 2016, the D.C. Circuit reversed the Court's Order and remanded for further proceedings, concluding that Local Rule 7(b) was inconsistent with Federal Rule of Civil Procedure 56. *See* Mandate, ECF No. 70; USCA Case Number 14-7197. In January 2017, the Court ordered supplemental briefing. W&S's motion for summary judgment is now ripe for review.

**III. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). On the other hand, to defeat summary judgment, the nonmoving party must demonstrate that there is a genuine issue of material fact. *Id.* at 324. A

material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Further, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

**IV. Analysis**

   **A. Mr. McLean is Personally Liable**

As an initial matter, Mr. McLean argues that he never agreed to "personally pay for legal services" because he signed the Engagement Agreement on behalf of Crumens, a corporation. Def.'s Opp'n, ECF No. 55 at 5. Therefore, Mr. McLean contends that he is "not liable for any legal fees." *Id.* at 3-4.

Generally, a corporation is liable for its own debts. "The general rule is that a corporation is regarded as an entity separate and distinct from its shareholders.'" *Ruffin v. New Destination, LLC*, 773 F. Supp. 2d 34, 40 (D.D.C. 2011) (quoting *Lawlor v. District of Columbia,* 758 A.2d 964, 975 (D.C. 2000)). To that end, a corporation is treated as separate and distinct from its owner, even if it is wholly owned by one individual or entity. *Alkanani v. Aegis Def. Servs.*, 976 F. Supp. 2d 1, 8 (D.D.C. 2013) (citing *Quinn v. Butz*, 510 F.2d 743, 757 (D.C. Cir. 1975)). Consequently, a plaintiff attempting to

5

hold an individual liable for the actions or obligations of a corporation must establish that there is some reason to disregard the corporate form. *See id.*

Here, however, Mr. McLean may not escape personal liability because he signed the Engagement Agreement on behalf of a legal entity that never existed. "In [the District of Columbia,][3] an agent who enters into a contract is held personally liable on it, and he does not escape liability by purporting to act for a fictitious or nonexistent principal." *Resnick v. Abner B. Cohen Advert., Inc.*, 104 A.2d 254, 255 (D.C. 1954). Indeed, if an individual acts on behalf of a corporation before incorporation, the individual is jointly and severally liable for the corporation's debts. *Robertson v. Levy*, 197 A.2d 443, 447 (D.C. 1964)(holding an individual personally liable because the corporation did not exist at the time of the contract and therefore, the individual "assumed to act as a corporation without any authority so to do"); *see Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 38 (D.D.C. 2013)(citing *Robertson v. Levy* for the proposition that "when an individual purports to act on behalf of a corporation and the corporation

---

[3] Federal courts apply the common law of the jurisdictions in which they sit. *See Tidler v. Eli Lilly & Co.,* 851 F.2d 418, 424 (D.C. Cir. 1988) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938)). The parties do not argue that any other jurisdiction's law should apply.

6

has not yet been formed, the individual is liable for the debts he incurred").

Despite Mr. McLean's arguments to the contrary, *see* Def.'s Opp'n, ECF No. 55 at 3-4, it is clear that he was acting as a principal on behalf of Crumens when he signed the Engagement Agreement, *see* Def.'s Dep., ECF No. 51-3 at 40:7-10 ("Q: were you acting as a principal on behalf of Crumens Limited when you signed this letter? A: Yes."); *see* E.A., ECF No. 51-2 at 6 (Mr. McLean's signature on behalf of Crumens). And it is undisputed that Crumens did not exist at the time Mr. McLean signed the Engagement Agreement. Indeed, Crumens never existed as a corporate entity. *See, e.g.*, Def.'s Dep., ECF No. 51-3 at 29:10-18 ("Q: Did Crumens Limited ever have any office space? A: No. Q: Did it ever have any bank accounts? A: No. Q: Did it ever have any employees? A: No. Q: Did it ever have any funding? A: No."); Def.'s Interrog., ECF No. 51-5 at 18 ("Defendant does not know the current status, if any, of Crumens, Ltd . . . . Defendant believes that Crumens, Ltd. is not an operating entity. At the time the engagement letter was signed, Crumens, Ltd., was in the process of formation . . . .").

Therefore, because the record establishes that: (1) Mr. McLean signed the Engagement Agreement on behalf of Crumens; and (2) Crumens did not exist at that time, Mr. McLean may not "escape liability" for Crumen's debts. *Resnick*, 104 A.2d at 255.

7

**B. Mr. McLean is Liable for Breach of Contract**

W&S argues that it is entitled to summary judgment because Mr. McLean agreed to pay the law firm for its legal services and failed to do so. Pl.'s Mot., ECF No. 51 at 11-12.[4] Mr. McLean puts forward several non-meritorious arguments, all of which are addressed below. *See* Def.'s Opp'n, ECF No. 55.

Under District of Columbia law, a plaintiff may prevail on a breach of contract claim if it establishes: "'(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" *CapitalKeys, LLC v. Democratic Republic of Congo*, 278 F. Supp. 3d 265, 285 (D.D.C. 2017) (quoting *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015)).

First, to prove there was a valid contract between the parties, W&S must establish "'mutual assent of the parties to all the essential terms of the contract.'" *Id.* (quoting *Duffy v. Duffy*, 881 A.2d 630, 633 (D.C. 2005)). The Engagement Agreement set forth the essential terms of the contract: the scope of

---

[4] W&S also argues that it is entitled to summary judgment on an "account stated" theory. Pl.'s Mot., ECF No. 51 at 8-11. Essentially, it argues that Mr. McLean agreed to pay a stated sum of money. *See id.* Because the Court agrees that Mr. McLean breached his contract with W&S, the Court need not reach this argument. Furthermore, it appears this "account stated" argument is a separate cause of action that was not plead in the complaint. *See* Compl., ECF No. 1; *Corp. Sys. Res. v. Washington Metro. Area Transit Auth.*, 31 F. Supp. 3d 124, 140 (D.D.C. 2014)(analyzing an account stated claim).

W&S's legal services, the associated fees, Mr. McLean's obligations in paying for W&S's services, and W&S's obligations in representing Mr. Warneck. *See* E.A., ECF No. 51-2. By signing the Engagement Agreement, Mr. McLean "accepted and agreed to" the essential terms therein. *CapitalKeys*, 278 F. Supp. 3d at 285; *see* E.A., ECF No. 51-2 at 6; Def.'s Dep., ECF No. 51-3 at 39:16-21, 40:7-10 (agreeing he signed the Agreement).

Mr. McLean does not dispute that he signed the Engagement Agreement. *See generally* Def.'s Opp'n, ECF No. 55. Instead, he argues there was no contract because the Engagement Agreement was merely "an agreement that, if certain commercial transactions, which Defendant had discussed with Thomas Buchanan . . . were to come to fruition, Crumens Ltd. would be formed and would pay for very carefully delineated and prescribed legal services . . . ." *Id.* at 4. Thus, Mr. McLean essentially argues that any contract with W&S was subject to a condition precedent that "certain commercial transactions" come to fruition. *See id.* Because the "deal" never materialized, Mr. McLean contends that the contract was never formed. *See* Def.'s Interrog., ECF No. 51-5 at 20 ("The transaction which was to provide funds . . ., and/or provide for payment of billings of Plaintiff, did not close out and no funds were available. Defendant did not contract with Plaintiff.").

9

No reasonable jury could agree. There is no language in the unambiguous Engagement Agreement supporting Mr. McLean's argument that the contract was contingent on a condition precedent. *See* E.A., ECF No. 51-2. As discussed, the Engagement Agreement clearly states that "Crumens Ltd. has agreed to pay [Mr. Warneck's] costs and legal expenses in connection with the litigation." *Id.*

Regardless, Mr. McLean relies on emails between himself and Mr. Buchanan to support his argument that the parties had a "mutual understanding" that there was "never any agreement" because payment was "contingent" on "consummation of a 'deal.'" Def.'s Opp'n, ECF No. 55 at 5.[5] However, the record clearly contradicts his argument and Mr. McLean's own conduct after signing the contract belies his contentions. *See CapitalKeys*, 278 F. Supp. 3d at 286 (considering the parties' conduct post-

---

[5] W&S argues that the Court may not consider parol evidence. *See* Reply, ECF No. 71 at 5-6. Not so. "[O]rdinarily conditions precedent to a contract must be strictly and literally fulfilled and that one of the exceptions to the Parol Evidence Rule permits the introduction of outside evidence to show the existence of an unfulfilled condition precedent to liability." *Rowe v. Shehyn*, 192 F. Supp. 428, 431 (D.D.C 1961)(discussing an exception to that general rule not applicable here); *Blackman v. Hustler Magazine, Inc.*, 620 F. Supp. 1501, 1513 (D.D.C. 1984), *aff'd in part, rev'd in part on other grounds,* 800 F.2d 1160 (D.C. Cir. 1986) ("Under the law of . . . the District of Columbia, an oral condition precedent to a written contract may be established by parol evidence.")(citing *Mark Keshishian & Sons, Inc. v. Washington Square, Inc.,* 414 A.2d 834 (D.C. App. 1980)).

contract). For example, Mr. McLean repeatedly emailed W&S, assuring the firm that it "will be paid as promised." Def.'s Ex., ECF No. 55-1 at 104. At one point, he also stated that he would be "happy" to "guarantee payment." *Id.* at 95. The Court has read the hundreds of pages of emails that Mr. McLean attached to his memorandum, *see* ECF Nos. 55-1, 55-2, and 55-3, and it is apparent that Mr. McLean's references to another "deal" were offered as excuses for his months-long delay in paying W&S. *See, e.g.*, ECF No. 55-1 at 114 (Email from Mr. McLean: "I am sorry it is taking so long."); *id.* at 154 (Email from Mr. McLean: "If the wire is not on the way to you tomorrow I will liquidate securities and send [money]"); *see also* Buchanan Decl., ECF No. 51-7 ¶ 4 ("Each and every week . . . Mr. McLean advised that payment was forthcoming. His usual explanation was that 'the deal' was about to close"). Judging by the sheer volume of emails W&S sent Mr. McLean to collect payment and the lack of factual support for Mr. McLean's contentions, no reasonable jury could believe that W&S "knew and acknowledged that any and all payments for legal services were to be made from funds resulting from transactions for which the Defendant acted solely as a facilitator." Def.'s Opp'n, ECF No. 55 at 5. Finally, Mr. McLean never objected to an invoice as premature or inappropriate in light of the deal not materializing. McLean Dep., ECF No. 51-3 at 45:10-13.

11

Second, the parties' valid Engagement Agreement obligates Mr. McLean to compensate W&S for the legal services performed pursuant to the Agreement. *See CapitalKeys*, 278 F. Supp. 3d at 286. For example, the agreement requires that Mr. McLean pay the firm's fees, as set forth in paragraph two, within thirty days of receiving an invoice. E.A., ECF No. 51-2 at 2-3.

Nonetheless, Mr. McLean argues that he had no obligation to pay W&S. First, he contends that W&S "never sought payment from or made any demand on Defendant until months had elapsed without payment" and that he never "received any information relating to or regarding legal services that Plaintiff was performing." Def.'s Opp'n, ECF No. 55 at 5. Although Mr. McLean did not cite specific pages in the record, the Court read the hundreds of pages that Mr. McLean attached to his memorandum.[6] A reasonable jury could not agree with Mr. McLean's arguments because there is no factual support for them. The record establishes that W&S incessantly contacted him to collect payment. *See generally* Def.'s Exs., ECF Nos. 55-1, 55-2, 55-3 (over one hundred pages of emails requesting payment). Furthermore, it is abundantly clear that Mr. McLean received and acknowledged receiving W&S's

---

[6] Despite having done so, it is not the Court's duty to search through Mr. McLean's lengthy exhibits. *See Potter v. District of Columbia*, 558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, J., concurring) ("[J]udges 'are not like pigs, hunting for truffles buried in briefs' or the record." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

12

invoices. *See, e.g.,* Def.'s Ex., ECF No. 55-1 at 87-89 (email discussion between Mr. McLean and W&S regarding April and May 2012 invoices).

Mr. McLean also argues that the legal services W&S provided were outside of the scope of the Engagement Agreement and thus, he has no obligation to pay. *See* Def.'s Opp'n, ECF No. 55 at 4-5; *see also* Def.'s Interrog., ECF No. 51-5. To the contrary, the Engagement Agreement states that "the scope of our engagement will be limited to the representation of [Mr. Warneck] in the litigation. We have agreed that our present engagement is limited to performance of services related to the litigation." E.A., ECF No. 51-2 at 2. The Agreement goes on to define "litigation" as "potential litigation involving the Department of Justice, the Department of Transportation, Creditors of Direct Air, and other matters relating to [Mr. Warneck's] employment at Direct Air." *Id.* The hundreds of pages of billing records Mr. McLean included as exhibits fully support that W&S limited its representation to services "related to the litigation." *See, e.g.*, Def.'s Exs., ECF No. 55-1 at 7-86, 160-195; ECF No. 55-2 at 25-41. Moreover, despite receiving invoices for almost a year, Mr. McLean *never* objected to W&S's representation or invoices. *See generally* Def.'s Exs., ECF Nos. 55-1, 55-2, and 55-3; Def.'s Dep., ECF No. 51-3 at 45:10-13 ("Q:

When you received any of [the invoices] did you ever challenge any of the services rendered in those bills? A: No.").

Therefore, despite Mr. McLean's arguments to the contrary, the record establishes that Mr. McLean received and accepted W&S's invoices. As such, no reasonable jury could find that Mr. McLean was not obligated to pay W&S for its legal services. *See Ristau v. Madhvani*, 1991 WL 283666, at *1-2, 4 (D.D.C. Dec. 20, 1991) (ruling in favor of attorney on breach of contract claim because, among other reasons, the "defendants have never claimed that [the attorney's] performance of the work was in any way unsatisfactory").

Third, it is undisputed that Mr. McLean did not make any payment toward the amount he was obligated to pay. Def.'s Dep., ECF No. 51-3 at 47:6-9 ("Q: Would you agree to date, Mr. McLean, that you have paid none of the Winston & Strawn legal bills? A: Yes, sir.").

Finally, W&S "'has been deprived of the use of the money withheld' and has incurred damages as a result of Defendants' breach." *CapitalKeys*, 278 F. Supp. 3d at 286 (quoting *Bragdon v. Twenty-Five Twelve Assocs. Ltd. P'ship*, 856 A.2d 1165, 1171 (D.C. 2004)). Having established a valid contract and Mr. McLean's breach thereof, W&S is entitled to the remaining amount owed pursuant to the Engagement Agreement. *See id.* at 287 (citing *Vector Realty Grp., Inc. v. 711 Fourteenth St., Inc.*,

14

659 A.2d 230, 234 n.8 (D.C. 1994)). W&S requests $494,760.40 in contract damages and the record establishes that this is the amount owed. *See* Statement of Account, ECF No. 51-6.[7] Moreover, Mr. McLean does not argue that the amount sought is incorrect. *See generally* Def.'s Opp'n, ECF No. 55.

In sum, there is no factual dispute that the parties entered into a written agreement for legal services, that the legal services were provided, that Mr. McLean owes W&S for those legal services, and that Mr. McLean has not paid W&S.

**V. Conclusion**

Accordingly, the Court hereby **GRANTS** W&S's motion for summary judgment and awards W&S $494,760.40 in damages. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:** **Emmet G. Sullivan**
**United States District Judge**
**October 24, 2018.**

---

[7] The total outstanding bill is actually $495,053.60, but $293.20 was omitted from W&S's calculation. *See* Pl.'s Mot., ECF No. 51 at 5 n.1.